# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PAIGE GAGLIANO,

                    **Plaintiff,**

          **v.**                            **Case No. 14-CV-1512**

STATE COLLECTION SERVICE,

                    **Defendant.**

## ORDER

### I.    Facts and Procedural History

When attempting to purchase a business, unpaid debts on her credit report were impairing plaintiff Paige Gagliano's ability to obtain a loan needed to purchase a business. She contacted defendant State Collection Service, Inc. regarding multiple debts totaling $807.20. The parties reached an agreement pursuant to which, according to Gagliano, all the debts would be immediately removed from her credit report if she made a single payment resolving one of the debts and entered into a payment plan for the others. State Collection Service accepted one payment in the amount of $162.90 but did not remove the unpaid debts from her credit report.

Gagliano promptly filed this suit on December 4, 2014, alleging that State Collection Service violated the Fair Debt Collection Practices Act (FDCPA) and the Wisconsin Consumer Act (WCA). (ECF No. 1.) She sought the maximum $1,000 in damages permitted under the FDCPA. She also sought $42,500 in actual damages, representing the additional sum she allegedly had to pay for the business due to delays in obtaining financing. She further sought $145,246 in alleged increased loan costs due to a higher interest rate she had to pay, $100,000 in punitive damages, and $100,000 for emotional distress. (ECF No. 55 at 1-2.) Gagliano made no further payment toward the relevant debts.

A jury trial commenced on January 27, 2016. Shortly before trial Gagliano withdrew her claim for damages related to increased interest costs. (ECF No. 35.) And the court concluded at trial that Gagliano had not established a basis for an award of punitive damages. Ultimately, Gagliano asked the jury to award her $1,000 in statutory damages and actual damages encompassing $42,500 for alleged increased costs relating to the purchase of her business and an additional unspecified sum for emotional distress. After a two-day trial, the jury found that State Collection Service used "false representations or deceptive means to collect or attempt to collect a debt." (ECF No. 43.) Consistent with *Kobs v. Arrow Serv. Bureau*, 134 F.3d 893, 896 (7th Cir. 1998), the questions of actual and statutory damages were presented to the jury. It awarded

Gagliano $162.90 in statutory damages and no actual damages. (ECF No. 43.) Judgment was entered accordingly. (ECF No. 46.)

On February 10, 2016, Gagliano filed a motion seeking $94,225.00 in attorney fees pursuant to 15 U.S.C. § 1692k(a)(3) for 345.7 hours of attorney and paralegal time. State Collection Service opposes the motion, arguing that Gagliano's recovery was nominal and only an insignificant fraction of the $381,746.00 she demanded prior to trial. (ECF No. 55.) The Clerk of Court assessed costs in the amount of $2,513.40 against State Collection Service (ECF No. 60) and neither party has asked the court to review that determination in accordance with Civil Local Rule 54(c).

## II.     Legal Standard

"Plaintiffs who prevail under the Fair Debt Collection Practices Act are entitled to an award of costs and reasonable attorney's fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009) (citing 15 U.S.C. § 1692k(a)(3); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995)). "[T]he award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory." *Zagorski v. Midwest Billing Servs.*, 128 F.3d 1164, 1166 (7th Cir. 1997) (citing *Tolentino*, 46 F.3d at 651; *Mace v. Van Ru Credit*, 109 F.3d 338, 344 n.3 (7th Cir. 1997)). Because no fixed formula exists for calculating attorney's fees in FDCPA actions, courts generally begin with calculating the lodestar, consisting of the reasonable hourly rate for the attorney's work multiplied by the number of hours reasonably expended in prosecuting the

action. *Schlacher*, 574 F.3d at 856 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007)). The court then adjusts the lodestar figure, up or down, based on a variety of factors, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Id.* at 856-57 (citing *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999); *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 946 (7th Cir. 1997)). "'[T]he most critical factor' in determining the reasonableness of the award 'is the degree of success obtained.'" *Zagorski*, 128 F.3d at 1166-67 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked." *Id.* at 1167.

The district court is required to provide a clear explanation for its award. *Schlacher*, 574 F.3d at 857. A court is not permitted to merely "eyeball" an award or reduce an award based upon a gut reaction that the amount would otherwise be excessive. *Id.* (citing *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992)).

### III.     Calculation of the Lodestar

State Collection Service does not challenge the hourly rates of $300 for attorney Nathan DeLadurantey, $250 for attorney Heidi Miller, and $125 for a paralegal. Thus, the only issue is the number of hours reasonably expended.

In the world of federal litigation, especially actions that proceed to trial, this action was not complex. *See Pappenfuss v. Receivable Mgmt. Servs. Corp.*, 2013 U.S. Dist. LEXIS 138369 (E.D. Wis. Sept. 26, 2013) (noting that FDCPA cases are generally not complicated). Even the plaintiff concedes as much. (ECF No. 59 at 15.) Neither party filed a dispositive motion. Aside from motions in limine, the parties filed three pretrial motions. Gagliano sought leave to file an amended complaint to add an employee of State Collection Service as a defendant (ECF No. 15), a motion the court denied (ECF No. 17). Gagliano filed a motion to compel discovery (ECF No. 18), which the court granted in part (ECF No. 21). State Collection Service sought leave to file an untimely motion for summary judgment (ECF No. 22), which the court denied (ECF No. 24). Four depositions were taken. Gagliano deposed three employees of State Collection Service and State Collection Service deposed Gagliano. (ECF No. 50 at 4.) The parties' motions in limine, dealing with approximately 16 issues (*see* ECF No. 34 at 4-5), were generally straight-forward evidentiary matters. The jury trial lasted two days and included the testimony of four witnesses.

In assessing the reasonableness of attorneys' fees one factor is what was awarded in similar cases. *Tolentino*, 46 F.3d at 652 (citing *Hensley*, 461 U.S. at 441). While FDCPA litigation is extremely common, as are disputes over attorneys' fees in such cases, it is uncommon for an FDCPA case to proceed to a jury trial. The court has identified only a

handful of cases from around the country where courts were required to assess the reasonableness of fees following a jury trial in an FDCPA case.

In the most-recent example the court identified, the United States District Court for the District of Colorado awarded $26,647.00 for 143.8 hours of attorney and paralegal time in a case where, following a jury trial, judgment was entered in favor of the plaintiff on one out of four of his FDCPA claims for $31 in actual damages and $1,000 in statutory damages. *Sherwood v. BRT Corp.*, 2015 U.S. Dist. LEXIS 144297 (D. Colo. Oct. 23, 2015). The plaintiff's claim was for $35,150.50 in attorneys' fees, which included a 25% reduction for time spent on a claim that was dismissed at summary judgment. The court reduced the fee in part because certain attorneys on the case had "insufficient FDCPA experience, skill, and reputation" to merit the $250 hourly rate the court found appropriate for FDCPA "attorneys with substantial experience." *Id.* at 6-10.

In another recent case, also out of Colorado, the court awarded the plaintiff $19,900 for 115.6 hours of attorney work. *Garcia v. Midland Credit Mgmt.*, 2015 U.S. Dist. LEXIS 108783 (D. Colo. Aug. 18, 2015). The award was a reduction of the $28,900 sought by the plaintiff, the court noting that counsel should have been more efficient given that he had litigated over 2,300 FDCPA cases in the District of Colorado alone. *Id.* at 4-5. The court concluded that 79.6 hours was the reasonable number of hours required to prosecute the matter through a jury trial where the plaintiff prevailed on two of her four FDCPA claims and was awarded statutory damages of $220.50. *Id.* at 1, 8.

In *Evankavitch v. Green Tree Servicing, LLC*, 2014 U.S. Dist. LEXIS 125557 (M.D. Pa. Sept. 9, 2014), following a two-day jury trial the plaintiff recovered $1,000 in statutory damages on her FDCPA claim. The plaintiff sought $115,470 for 447.3 hours of attorney and paralegal time on the case. *Id.* at 4-5. After excluding certain hours for matters not related to the FDCPA claims and for an unsuccessful summary judgment motion, the court reduced the billable hours to 352.54. *Id.* at 11. The court then reduced the lodestar by 10% because the claims were straightforward and the plaintiff was successful on only one of her two theories of liability. *Id.* at 12. The total fee award was $81,569.97. *Id.* at 13.

The court in *Sclafani v. Allianceone Receivables Mgmt.*, 2011 U.S. Dist. LEXIS 142771 (S.D. Fla. Sept. 28, 2011), found 44.4 hours "unreasonably high" for a case that proceeded to a jury trial but ended after the plaintiffs' case-in-chief when the court directed a verdict for plaintiff on two of her FDCPA claims and for defendant on the plaintiffs' two related state law claims. *Id.* at 2, 6. The co-plaintiff then withdrew his remaining FDCPA claim and was awarded $1,000 in statutory damages. *Id.* at 2. The court noted that the case was not complicated or novel and that counsel's experience litigating FDCPA cases should have resulted in more efficiencies. *Id.* at 6. Therefore, the court reduced counsel's hours by 30% to arrive at the lodestar. *Id.* at 6. The court then further cut the lodestar by another 25% to account for the fact that one plaintiff did not prevail on any of his claims, arriving at a total award of $5,827.50. *Id.* at 8.

In another case out of the Southern District of Florida, a magistrate judge recommended that $15,648.50 in attorney's fees be awarded after a jury awarded the plaintiff $39,000 for violations of the FDCPA, a related state law, and the Telephone Consumer Protection Act (TCPA). *Bianchi v. Bronson & Migliaccio, LLP,* 2011 U.S. Dist. LEXIS 9881, 3 (S.D. Fla. Feb. 2, 2011). The court accepted plaintiff's counsel's preemptive reduction of his claimed fees by one-third to account for work done on the TCPA claim. *Id.* at 17-18. The court found reasonable 40.74 hours for prosecuting the action and an additional 3.97 hours for pursuing the fee petition. *Id.* at 30-32.

Following a two-day trial, the jury in *Danow v. Law Office of David E. Borback, P.A.,* 634 F. Supp. 2d 1337, 1345 (S.D. Fla. 2009), returned a verdict for the plaintiff on his FDCPA claim, awarding him $1,000 in statutory damages. *Id.* at 1339. The plaintiff sought $89,133.10 in attorneys' fees, *id.*, which included time spent on the plaintiff's successful appeal of a prior dismissal of the action. *Id.* at 1340, 1343. Plaintiff's counsel stated they had already excluded significant time by not seeking compensation for significant paralegal time and time that was duplicative among the three attorneys who worked on the case. *Id.* at 1344. The court deducted 12 hours for what it found was non-compensable time, *id.* at 1344, and 38.9 hours for an attorney who was added to the case shortly before trial to serve as co-counsel at trial, *id.* at 1345. The court concluded that a second attorney "was unnecessary for the simple presentation of this case to the jury over two trial days," especially considering that co-counsel's only apparent role was

8

"assisting only with locating documents and other such tasks." *Id.* Awarding $62,895 for 209.65 hours of attorney time, the court rejected the defendant's argument that the attorneys' fees were excessive in light of the "nominal" damages awarded by the jury. *Id.* at 1344.

The court in *Johnson v. JP Morgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 133096 (E.D. Cal. Dec. 1, 2010), awarded $56,770.00 in attorney's fees for 289.3 hours of work in a case where, after a four-day trial, a jury awarded the plaintiff $7,450.00 on her FDCPA claim, consisting of $750.00 in statutory damages, $1,000.00 for emotional distress, and $5,700 for other damages. *Id.* at 2-4, 6. The award was a reduction of the $65,800 sought by the plaintiff, the court finding that work on certain aspects of the case was excessive. *Id.* at 8. Although the plaintiff did not prevail on all of her claims, the court found that the claims were all related and thus did not further reduce the fees. *Id.* at 9-14.

Finally, in *White v. Cadle Co.*, 1999 U.S. Dist. LEXIS 15760 (S.D. Ohio Sept. 30, 1999), the plaintiff alleged FDCPA and state common law and statutory claims against two defendants, seeking $7,648 in actual damages and $400,000 in punitive damages. *Id.* at 20. After a two-day trial, the jury awarded him $300 in actual damages, $500 in statutory damages under the FDCPA, and $900 in statutory damages for his state statutory law claim. *Id.* at 3. Plaintiff sought $17,571.62 in attorney's fees. *Id.* at 2. After some minor cuts, the court concluded that counsel spent 133.9 hours on the matter. *Id.*

9

at 17-18. After reducing the fee by 30% due to the plaintiff's only partial success, the court awarded $13,524.62 in fees. *Id.* at 22-23.

Gagliano's claim for 345.3 hours of work by her attorneys is greater than the number of hours sought in all but one of the eight cases just discussed. As to that one case, *Evankavitch*, 2014 U.S. Dist. LEXIS 125557, it is not clear what led to the extraordinary hours spent there. In any event, the present case was not exceptional. The fact that the hours sought here are generally significantly higher than those sought in other cases tends to strongly suggest that the number of hours Gagliano's attorneys spent prosecuting this case were unreasonably high.

"In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in original)). "Though efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher*, 574 F.3d at 858 (citing *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008), *Trimper v. City of Norfolk*, 58 F.3d 68, 76-77 (4th Cir. 1995); *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992); *Jardien v. Winston Network, Inc.*, 888 F.2d 1151,

1160 (7th Cir. 1989)). The court finds that a portion of Gagliano's attorneys' fees were the result of inefficiencies in staffing.

For starters, the court finds that it was unnecessary for two attorneys to attend the depositions conducted by Gagliano. Both of Gagliano's attorneys each billed 8.5 hours for two depositions on May 21, 2015 (ECF No. 51-1 at 7) and 3.5 hours for a deposition on June 11, 2015 (ECF No. 51-1 at 8). It is the court's understanding that DeLadurantey conducted the depositions; Miller's presence was not required. Consequently, 12 hours may be deducted from her total.

In that same vein, the court also finds that it was unnecessary for both attorneys to participate in *preparing* for the depositions or in preparing Gagliano for her deposition. The time Miller charged for preparing for the depositions conducted by DeLadurantey (5.5 hours on May 20, 2015 and 3.5 hours on June 11, 2015), and DeLadurantey's time preparing Gagliano for her deposition (2 hours on July 14, 2015), given that he did not attend the deposition, should all be excluded as unreasonable.

Similarly, the court finds that, in a simple case like this, it was not necessary for two lawyers to attend the trial. The court acknowledges that having a second-chair assistant can be beneficial for an attorney. It also can be a terrific learning opportunity for a younger lawyer. However, in a routine case like this it is a luxury a reasonable fee-paying client would not accept. Thus, a total of 16.5 hours (8.5 hours on January 26, 2016, and 8 hours on January 27, 2016) will be deducted from Miller's total.

11

Counsel's records for trial preparation reflect similar inefficiencies. Rather than one attorney working on discrete aspects of trial preparation, the records reflect DeLadurantey and Miller at times each doing the same task or performing tasks together. (See, e.g., billing records of December 29, 2015, January 9, 2016, January 15, 2016, January 18, 2016).

Counsel's billing records further reflect a number of entries that would not be acceptable to a reasonable fee-paying client. For example, charges for returning a client's call and leaving a voicemail (March 10, 2015, 0.1 hours; June 9, 2015, 0.1 hours) or discussions of the case amongst the attorneys (e.g., February 3, 2015, 0.2 hours each; October 20, 2015, 0.3 hours each; November 4, 2015, 0.4 hours each; December 16, 2015, 0.3 hours each), including at least one instance where, confusingly, the meeting is reflected on only one attorney's records (May 19, 2015, 0.2 hours), would not be accepted by a reasonable fee-paying client.

Finally, other billing entries were excessive. For example, Gagliano's attorneys spent extensive time preparing proposed jury instructions (6 hours on January 2, 2016, another hour on January 8, 2016, and 0.7 hours on January 9, 2016, as well as block billing entries where it is not possible to discern how much time was spent specifically on the jury instructions (1.5 hours on January 8, 2016, and another four hours on January 9, 2016,)). The plaintiff's jury instructions were generally pattern instructions.

Those few that were not pattern instructions related to the FDCPA and the WCA, which should have required minimal preparation time for experienced FDCPA attorneys.

Moreover, in a simple case like this it was inappropriate to devote time to presenting an opening statement to a "focus group" (2 hours on January 25, 2016) or to review the case with "mock jurors" (1.8 hours on January 24, 2016). Even if these entries reflect nothing more than talking about the case with family and friends (the billing records do not indicate that Gagliano's attorney paid for a focus group or mock jurors), a reasonable fee paying client would not accept being charged $1,050 for such actions in a case like this.

Gagliano's attorneys also spent an excessive amount of time preparing questions for State Collection Service employees at trial. The time spent might have been as much as 33.2 hours on January 16, 18, 19, 20, 22 and 23, although some entries are amidst block billing entries and thus it is not possible to discern exactly how much time was devoted to any one task. Similarly, counsel spent as much as 20.3 hours preparing questions for Gagliano (January 21 and 22, 2016) in addition to 2.2 hours meeting with her, a meeting attended and billed by both attorneys (January 23, 2016). Indeed, Gagliano's attorneys billed more time just preparing witness questions than the attorneys in *Sclafani* and *Bianchi* spent prosecuting their entire cases.

Identifying all inappropriate charges is impossible. To the extent it would be possible, doing so in a written order itself would be inefficient and countermand the

Supreme Court's caution to not let the fight over attorneys' fees turn into a second full-blown litigation. *See Hensley*, 461 U.S. at 437. The examples noted here are intended only to show that inefficient staffing and unreasonable billing permeated this case. A reasonable fee-paying client would not accept these sorts of billing practices and the court cannot force State Collection Service to bear these costs.

The court finds it necessary to significantly cut attorney Miller's time given that it was largely her time that was unnecessary in light of the fact that this was really a one attorney case. The court finds that the 188.3 hours Miller seeks must be cut by 65% percent to arrive at a reasonable figure of 65.9 hours for her work. This figure appropriately accounts for the time that a junior attorney might be reasonably expected to devote to support the efforts of a more-experienced attorney who is primarily responsible for prosecuting the action. The court finds that the 157 hours attorney DeLadurantey attributed to prosecuting this action to be generally reasonable, especially in light of the significant cut to Miller's hours and the fact that DeLadurantey conducted the State Collection Service depositions and trial. The court finds a modest cut of 10% appropriate to arrive at the reasonable sum of 141.3 hours for DeLadurantey's work. Together, that comes to 207.2 hours.

Given the nature of the plaintiff's claims, the discovery reasonably needed to pursue those claims, and the fact that a trial was necessary to resolve Gagliano's claims, the court finds this to be a reasonable number of hours to prosecute the case Gagliano

presented. The vast majority of the hours billed were occasioned by the fact that this matter proceeded to trial. Although the billing records date back to November 21, 2014 (ECF No. 51-1 at 1), two-thirds of all hours Gagliano's attorneys spent on this case were spent in 2016 even though the trial ended less than a month into the year. (ECF No. 41.)

Multiplying the number of hours reasonably billed by DeLaudurantey and Miller by their hourly rates, and adding 0.4 hours for a paralegal at a rate of $125 per hour, yields a lodestar sum of $58,915.

## IV. Adjustment of the Lodestar

State Collection Service argues that the lodestar should be dramatically reduced because "[f]or all intents and purposes, Plaintiff lost the case." (ECF No. 55 at 3.) Specifically, State Collection Service argues that the lodestar should be reduced in proportion to Gagliano's success at trial as compared to her initial demand.

Following the filing of the lawsuit, in her initial disclosures pursuant to Rule 26(a)(1) Gagliano sought damages in the amount of $381,846, broken down as follows: $100,000 for emotional distress; $35,500 for the increased purchase price of the property (later increased to $42,500 by trial); $145,246 in increased borrowing costs, $1,000 in FDCPA statutory damages; $100 in statutory damages under state law; and $100,000 in punitive damages under state law. (ECF No. 55-1, ¶ C.) She recovered $162.90, a mere 0.044% of what she initially demanded. State Collection Service argues that this is the

percentage of the lodestar she should recover, which, based on the lodestar calculated by the court, would yield attorneys' fees of $25.92. (ECF No. 55 at 24.)

The Court of Appeals for the Seventh Circuit has rejected this sort of blind mathematical approach to fee calculations. *See Schlacher*, 574 F.3d at 857 (quoting *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991)). Moreover, notwithstanding State Collection Service's assertions that "[t]he court must recognize at the end of the day that it is the Defendant that has really been harmed[,]" and "that Defendant was right and that Plaintiff was wrong" (ECF No. 55 at 26), the fact is that Gagliano is the prevailing party. As a result, in light of the FDCPA's mandatory fee shifting, her attorneys are entitled to be compensated for the time reasonably necessary to litigate this action.

"A partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed …." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (discussing *Hensley*, 461 U.S. at 440). Time spent pursuing unsuccessful claims, or aspects of unsuccessful claims, that are "distinct in all respects from [plaintiff's] successful claims" is not recoverable. *Nanetti v. University of Illinois*, 944 F.2d 1416, 1419 (7th Cir. 1991) (quoting *Hensley*, 461 U.S. at 440).

Gagliano's complaint raised two claims – one for a violation of the FDCPA and one for a violation of the WCA. (ECF No. 1.) She prevailed only on her FDCPA claim.

The WCA and FDCPA are parallel and the evidence necessary to prove a violation of the FDCPA is generally coextensive with that necessary to prove a violation of the WCA. (*See* ECF Nos. 42 at 16-18 (jury instructions) and 43 (special verdict).) However, punitive damages are available under only the WCA. A claim for punitive damages may open the door to significant discovery, legal research, and other attorney work not required for a claim under the FDCPA. For example, in her motion to compel the only reason offered by Gagliano as to why the information she sought was relevant was "that the documents are necessary to establish the punitive component of her case against Defendant." (ECF No. 18 at 2.) Additionally, at least one billing entry was explicitly for research regarding punitive damages. (0.5 hours on February 18, 2015.) Thus, Gagliano's failure on her WCA claim merits a small reduction of the lodestar.

More significantly, however, although she prevailed on her FDCPA claim and recovered modest statutory damages, Gagliano failed in her demand for significant actual damages. Statutory damages under the FDCPA are assessed based upon the "nature, frequency, and persistence of any violation of the FDCPA … and the extent to which that violation was intentional." (ECF No. 42 at 21.) Actual damages, however, open the door to all manner of additional evidence necessary to substantiate the claim. Therefore, the court regards her claim for statutory damages and her claim for actual damages as distinct under *Hensley*. *See Jackson*, 856 F.2d 890, 894 (discussing *Hensley*).

All the details regarding Gagliano's efforts to purchase a business, the higher interest rate she purportedly incurred, the delays in the purchase, her credit report, and other judgments against her were relevant only to her claim of actual damages. The same is true for Gagliano's efforts to show she suffered profound mental distress to the point of becoming suicidal as a result of State Collection Service's conduct. These theories of actual damages undoubtedly opened the door to significant additional discovery encompassing a wide variety of her personal medical and financial details. Certainly significant portions of document discovery were relevant only to Gagliano's unsuccessful effort to prove actual damages.

The court's observations at trial and related proceedings certainly demonstrate that Gagliano's pursuit of actual damages was the heart of her lawsuit. The relevant evidence of whether there was a violation of the FDCPA was simple and straightforward. The telephone calls were recorded (by both Gagliano and State Collection Service) and played for the jury to assess whether the statements of the defendant's employee violated the FDCPA. Because the calls were recorded, there was no dispute about what was said, the tone of the voices, etc. Were it not for all of the evidence regarding Gagliano's efforts to purchase the business and how State Collection Service's violation of the FDCPA allegedly caused emotional distress, the evidentiary portion of trial would have been significantly shorter. And a more limited trial would have meant shorter trial preparation.

When judged against the scope of the case that Gagliano prosecuted, her success was minimal. For that reason, the court finds that it is required to cut the lodestar figure to account for efforts expended pursuing unsuccessful aspects of her FDCPA claim.

In assessing whether the lodestar should be adjusted even more, the court also considers "the principle established and the harm checked." *Zagorski*, 128 F.3d at 1167. This action did not establish any new principle; it relied upon the well-established principle that deception in the collection of debts is not permissible. And the harm checked was comparatively minor. State Collection Service did not engage in any conduct remotely approaching the aggressive, berating, or hostile actions that led to the passage of the FDCPA. Significantly, rather than State Collection Service contacting Gagliano about her debts it was Gagliano who initiated the contact in an effort to arrange a resolution of her debt. The State Collection Service employee with whom Gagliano spoke was polite and sympathetic. The jury found the violation to be minor, awarding just 16% of what it was authorized to award as statutory damages.

Nonetheless, private actions like this are essential to achieving the FDCPA's goal of protecting consumers against abusive debt collecting practices. *See Pappenfuss*, 2013 U.S. Dist. LEXIS 138369, 21. Although the jury found only a minor violation, the court does not believe that, by itself, merits a reduction based upon lack of success. If the court judged the success of an FDCPA claim only by the percentage of possible statutory damages recovered by the plaintiff, attorneys would be unwilling to represent

Case 2:14-cv-01512-WED   Filed 05/13/16   Page 19 of 22   Document 64

clients suffering lesser violations of the FDCPA lest they not be fully compensated for their successful efforts. There is no indication that this was Congress' intent.

Rather, in assessing whether a case was a success, the outcome must be measured against reasonable outcomes. The most-egregious of FDCPA violations may merit the maximum of $1,000. But in a case where the debt collector was polite and sympathetic and the violation was arguably the result of a misunderstanding, $162.90 reasonably could be regarded as a resounding success. Gagliano's attorneys' unrealized expectations that this case was anything other than a minor case are otherwise accounted for in the court's reduction of the lodestar.

Considering all of the above, and most significantly the fact that a substantial portion of attorney time was undoubtedly directed towards Gagliano's unsuccessful attempt to establish that she suffered actual damages, the court concludes that the lodestar must be cut by one-third. The court is mindful that this is a significant deduction but believes that it is necessary to arrive at a figure that is reasonable in light of the success Gagliano obtained vis-à-vis the case she prosecuted.

The court is also mindful of the fact that even this slashed sum is still significant and might seem out of proportion to Gagliano's recovery of $162.90. But State Collection Service could have protected itself against exposure to escalating attorney's fees on the part of Gagliano by making an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure. An offer of judgment would have prevented Gagliano

from recovering those attorney's fees incurred after the date of the offer of judgment if she ultimately recovered less than the amount offered. *See Marek v. Chesny*, 473 U.S. 1, 10 (1985) ("Civil rights plaintiffs — along with other plaintiffs — who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected."). But State Collection Service apparently never made an offer of judgment, and it certainly was not required to do so.

If a minor violation of the FDCPA necessities discovery and a jury trial to resolve, it would offend Congress' intent in passing the FDCPA to fail to reasonably compensate plaintiff's counsel for the time and effort needed to obtain redress for the consumer. Accordingly, the could will order State Collection Service to pay the sum of **$39,276.67** as reasonable attorneys' fees incurred in prosecuting this action.

## V. Supplemental Fees

Gagliano seeks an additional $9,190 for time spent pursuing her motion for attorneys' fees. (ECF No. 61.) State Collection Service's only response to this supplemental request is to reiterate its view that Gagliano should receive, if anything, only a miniscule fraction of the fees sought (0.04% would be fair in State Collection Service's view). (ECF No. 62.)

Time spent establishing an entitlement to fees in an FDCPA case is compensable. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008). However, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at

437. The hours spent on the fee petition should have a rational relationship to the hours spent litigating the merits. *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001).

Gagliano's attorneys seek compensation for 34.10 hours of work in pursuing their motion for fees. The court finds that amount of time excessive. The court in *Sclafani* determined that 31.08 hours was the reasonable number of hours for prosecuting the *entire case*, including a jury trial. 2011 U.S. Dist. LEXIS 142771, 6. Gagliano's attorneys spent more time just to reply in support of the motion for attorneys' fees. The law relating to attorneys' fees should be well-known to experienced FDCPA attorneys. Moreover, as discussed above, Gagliano was only partially successful in her motion for attorneys' fees. To account for her limited success and the excessive time expended, the court finds it necessary to reduce the fees requested. The court will award the sum of **$3,000** for time reasonably devoted to pursuing the motion for fees.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for attorneys' fees (ECF No. 49) is **granted** as follows: State Collection Service, Inc. shall pay to Paige Gagliano the sum of **$42,276.67** as attorney's fees.

Dated at Milwaukee, Wisconsin this 13th day of May, 2016.

WILLIAM E. DUFFIN
U.S. Magistrate Judge